UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SEAN D. WHITE,

        Petitioner,

v.

        CASE NO. 05-CV-74273-DT
        HONORABLE AVERN COHN

CINDI CURTIN,

        Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING MOTION FOR AN EVIDENTIARY HEARING

### I. Introduction

This is a habeas case under 28 U.S.C. § 2254. Sean D. White ("Petitioner") is a state prisoner convicted of assault with intent to murder, armed robbery, first-degree home invasion, felon in possession of a firearm, and possession of a firearm during the commission of a felony following a jury trial in the Wayne County Circuit Court in 2002. In his pro se petition for writ of habeas corpus, Petitioner raises claims challenging the sufficiency of the evidence to support his convictions. Respondent, through the Michigan Attorney General's office, has filed a response to the petition contending that it should be denied for lack of merit.

For the reasons that follow, the petition will be denied. Petitioner's motion for an evidentiary hearing will also be denied.

1

## II. Facts and Procedural History

The material facts as gleaned from the record follow.

Petitioner's convictions arise from his assault and robbery of Robert Ware at Ware's home on St. Clair Street in Detroit, Michigan on October 30, 2001. At trial, Eloise Ware testified that, on the day of the incident, she and her husband Robert went to the store to cash a pension check. While they were in the store, she saw Petitioner looking at them through a window. She had seen Petitioner before, but did not know his name. Petitioner followed them home from the store. When they arrived at their two-story duplex, she stopped outside to talk to a neighbor and then went inside her home. While she was upstairs, she heard a knock on the door. When she asked who it was, she heard "Robby" and believed it was a family friend. She told her husband to get the door. A few moments later, she heard gunshots. When she looked down the hall, she saw Petitioner pointing a gun at her and saw that her husband was shot and lying at the bottom of the stairs. When Petitioner fled, she called the police and accompanied her husband to the hospital.

Mrs. Ware further testified that she spoke to neighbors and talked to the store owner the next day and learned that the man who had come to their home was known as "Scarhead." Mrs. Ware subsequently viewed photographs at the police station. She did not identify anyone as the perpetrator during an initial session, but she did not believe that Petitioner's photograph was among those she viewed. At a second session, she identified Petitioner as the perpetrator from a six-person photographic array. She also identified Petitioner as the perpetrator during trial.

Robert Ware testified that he saw Petitioner at the store when he and his wife

2

went to cash a pension check. When they arrived home, he heard a knock on the door and saw Petitioner at his side gate. He spoke to Petitioner briefly and closed the door. Ware heard another knock on the door, saw Petitioner on his porch, and told him to leave. A few minutes later, he heard a third knock on the door, heard someone say, "Robby," and went to the door at his wife's request. As Mr. Ware opened the door, Petitioner burst in and knocked him down. Petitioner was armed with a big, silver gun and demanded money. Mr. Ware gave Petitioner $400 from one of his pockets, but did not give him the rest of the money which was in his other pocket. Petitioner demanded more money, but Mr. Ware denied having more. Petitioner shot Mr. Ware in the leg and started up the steps. Mr. Ware grabbed Petitioner's pants because he was concerned for the safety of his wife and daughter upstairs. Petitioner struck Mr. Ware in the head with the butt of the gun and fired another shot up the stairs before fleeing the scene.

Mr. Ware testified that he was hospitalized and had to undergo surgery on his leg for the gunshot wound to his thigh, and had stitches for the wound on his head. Like his wife, Mr. Ware viewed photographs at the police station on two occasions after the incident and identified Petitioner as the perpetrator from a six-person photographic array on his second visit. Mr. Ware also identified Petitioner as the perpetrator during trial.

Detroit Police officers testified regarding their investigation of the incident, the victims' identifications, and Petitioner's arrest following a high speed chase on April 23, 2002..

Petitioner testified in his own defense at trial. He stated that he lived with his mother, had cut hair, frequented the party store visited by the Wares, knew Mr. Ware, and believed that Mr. Ware used drugs. He admitted that his nicknames included

3

"Cutter" and "Scarhead." He denied committing the crime. He testified that he and one of the police officers involved in the case had an acrimonious relationship and said that this was why he fled the police at the time of his arrest.

At the close of trial, the jury convicted Petitioner of assault with intent to commit murder, armed robbery, first-degree home invasion, felon in possession, and felony firearm. The trial court subsequently sentenced him to concurrent terms of 20 to 35 years imprisonment, 5 to 20 years imprisonment, and 2 ½ to five years imprisonment and a consecutive term of two years imprisonment on those convictions.

Following sentencing, Petitioner, through counsel, filed an appeal as of right with the Michigan Court of Appeals, raising claims challenging the photographic array and the denial of a motion to quash. Petitioner also filed a brief in pro per raising claims challenging the denial of a motion for evidentiary hearing and the sufficiency of the evidence. The Michigan Court of Appeals affirmed Petitioner's convictions. People v. White, No. 247608, 2004 WL 2126760 (Mich. Ct. App. Sept. 23, 2004) (unpublished). Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, which was denied. People v. White, 472 Mich. 937 (2005).

Petitioner thereafter filed the present habeas petition, raising the following claims:

> I. It was error for the trial court not to grant the Petitioner's motion for an evidentiary hearing because the proffered evidence in this case was not factually distinct in nature from the fact of the instant case and more prejudicial than probative of guilt.
>
> II. Did the insufficient evidence presented during the Petitioner's trial support the jury's verdict of guilt beyond a reasonable doubt on each of the five counts alleged resulting in the Petitioner being denied his constitutional right of due process clause.

4

III. It was a violation of the Petitioner's Eighth Amendment right to be protected against cruel and/or unusual punishment by giving the Petitioner a judgment for a case without sufficient evidence to convict.

### III. Analysis

#### A. Standard of Review

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified 28 U.S.C. § 2241 *et seq.*, govern this case because Petitioner filed his habeas petition after the AEDPA's effective date. See Lindh v. Murphy, 521 U.S. 320, 336 (1997). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court undertook a detailed analysis of the correct standard of review under the AEDPA. According to the Court:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied – the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the

> "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Id. at 412-13 (O'Connor, J., delivering the opinion of the Court on this issue).

In evaluating a state court decision under the "unreasonable application" clause, the Supreme Court further stated that a federal habeas court "should ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 411. "Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id.

The Supreme Court also clarified that the phrase "clearly established Federal law, as determined by the Supreme Court of the United States," refers to "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. In determining what constitutes clearly established federal law, therefore, a federal habeas court must look to pertinent United States Supreme Court precedent.

The AEDPA also requires that this Court presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. See Warren v. Smith, 161 F.3d

6

358, 360-61 (6th Cir. 1998).

When the state courts do not clearly address an issue as a matter of federal law, a federal habeas court must conduct an independent review of the state court's decision.  See, e.g., Harris v. Stovall, 212 F.3d 940, 943 (6th Cir. 2000).  This independent review requires the federal court to "review the record and applicable law to determine whether the state court decision is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented."  Id. at 943.  This independent review "is not a full, de novo review of the claims, but remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA."  Id.

### B. Evidentiary Hearing Claim (Habeas Claim I)

Petitioner first asserts that he is entitled to habeas relief because the trial court failed to conduct an evidentiary hearing.  Petitioner essentially claims that the trial court violated state law in denying his request for an evidentiary hearing.  As such, he is not entitled to habeas relief.  A state court's alleged failure to properly apply state law or its own procedural rules, even if well-established, is not cognizable on federal habeas review.  This Court's power to grant a writ of habeas corpus only extends to errors in the application of federal law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1975).  Further, given the Court's determination that his insufficient evidence claims lack merit, see discussion infra, Petitioner has not established that an evidentiary hearing is warranted in this case.  He is thus not entitled to relief on this claim.

7

## C. Insufficient Evidence Claims (Habeas Claims I & II)

Petitioner also asserts that he is entitled to habeas relief because the prosecution failed to present sufficient evidence to support his convictions. Specifically, Petitioner contends that the prosecution presented insufficient evidence identifying him as the perpetrator and of his intent to commit murder. In <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979), the United States Supreme Court established that a federal court's review of a sufficiency of the evidence claim must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." The Court must view this standard through the framework of 28 U.S.C. § 2254(d). See <u>Martin v. Mitchell</u>, 280 F.3d 594, 617 (6th Cir. 2002). The <u>Jackson</u> standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." <u>Jackson</u>, 443 U.S. at 324 n. 16. "The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim." <u>Matthews v. Abramajtys</u>, 319 F.3d 780, 788-89 (6th Cir. 2003) (citation omitted).

Under Michigan law, a conviction for assault with intent to murder requires proof beyond a reasonable doubt that the defendant committed: "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." <u>People v. Hoffman</u>, 225 Mich. App 103 (1997); see Mich. Comp. L. § 750.83. Circumstantial evidence and reasonable inferences drawn therefrom may be sufficient to prove the elements of the crime, see <u>People v. Jolly</u>, 442 Mich. 458, 466 (1993), including a defendant's intent or state of mind. See <u>People v. Dumas</u>, 454 Mich. 390, 398, 563 N.W.2d 31 (1997). To convict a defendant of armed robbery, the prosecution must

establish the following elements: (1) an assault, (2) a felonious taking of property from the victim's presence or person, (3) while the defendant is armed with a weapon described in the statute. See Mich. Comp. L. § 750.529; People v. Rodgers, 248 Mich. App. 702, 707 (2001). Michigan's first-degree home invasion statute provides:

> A person who breaks and enters a dwelling with intent to commit a felony, larceny, or assault in the dwelling, a person who enters a dwelling without permission with intent to commit a felony, larceny, or assault in the dwelling, or a person who breaks and enters a dwelling or enters a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, commits a felony, larceny, or assault is guilty of home invasion in the first degree if at any time while the person is entering, present in, or exiting the dwelling either of the following circumstances exists:
>
>   (a) The person is armed with a dangerous weapon.
>   (b) Another person is lawfully present in the dwelling.

Mich. Comp. L. § 750.110a(2). The elements of felon in possession under Michigan law are: (1) that the defendant was convicted of a felony, (2) that the defendant possessed a firearm, and (3) that at the time of possession less than three or five years, depending on the underlying felony, has passed since the defendant had completed his term of incarceration, satisfied all conditions of probation and parole, and paid all fines. See Mich. Comp. L. § 750.224f. The elements of felony firearm are that the defendant carried or possessed a firearm during the commission or attempted commission of a felony. See Mich. Comp. L. § 750.227b.

The Michigan Court of Appeals briefly addressed Petitioner's insufficient evidence argument and concluded that the testimony of the two eyewitnesses (the victims) provided sufficient evidence to support Petitioner's convictions of the charged offenses. See White, 2004 WL 2126760 at *2. Having reviewed the trial testimony, the

9

Court agrees and concludes that the Michigan Court of Appeals' determination is neither contrary to Supreme Court precedent nor an unreasonable application of the law and the facts. As set forth in detail above, the victims, Mr. and Mrs. Ware, identified Petitioner as the man who committed the charged offenses during a photographic array a few weeks after the shooting and again at trial. Mr. Ware testified that he was at home with his wife and daughter when Petitioner, armed with a gun, pushed his way into their home, demanded and took his pension money from him, shot him in the leg, and fired a second shot in the home. Mrs. Ware corroborated this testimony. Despite the lack of forensic evidence linking Petitioner to the crime, the victims' testimony provided sufficient evidence of identification. Further, the evidence that Petitioner was armed with a gun and shot Mr. Ware in the thigh was sufficient to establish the requisite intent to kill.

Petitioner's insufficient evidence claims essentially challenge the credibility and weight to be accorded the evidence presented at trial. However, it is well-settled that "[a] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Walker v. Engle, 703 F.2d 959, 969-70 (6th Cir. 1983). It is the job of the jury, not a federal habeas court, to resolve evidentiary conflicts. See Jackson, 443 U.S. at 326; Martin v. Mitchell, 280 F.3d 594, 618 (6th Cir. 2002). Given the evidence presented at trial, this Court finds that the Michigan Court of Appeals' determination that a rational trier of fact could have found the elements of assault with intent to commit murder, armed robbery, first-degree home invasion, felon in

possession, and felony firearm beyond a reasonable doubt was reasonable. Habeas relief is not warranted on Petitioner's insufficient evidence claims.

## IV. Conclusion

For the reasons stated above, Petitioner has failed to show that the state court decisions denying him relief are contrary to United States Supreme Court precedent or constitute an unreasonable application of federal law or the facts. Accordingly, the petition for writ of habeas corpus is **DENIED**. Given this determination, Petitioner's motion for an evidentiary hearing is also **DENIED**.

**SO ORDERED**.

                s/Avern Cohn
                AVERN COHN
                UNITED STATES DISTRICT JUDGE

Dated: May 14, 2007

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record and Sean White, 353512, Oaks Correctional Facility, 1500 Caberfae Highway East Lake, MI 49626-0038 on this date, May 14, 2007, by electronic and/or ordinary mail.

                s/Julie Owens
                Case Manager, (313) 234-5160